Thank you, your honor. I will try to be brief. May it please the court. I am John Sharp on behalf of Plaintiff and Appellant, Seaplane Adventures, LLC. I would like to say at the outset that Seaplane does not have a quarrel with COVID orders in general. Seaplane and its owner, it's a small business. Are not COVID deniers. They understand the need for COVID protections. In fact, had Seaplane been allowed to proceed to trial, it would have produced evidence which would have shown that Seaplane meets or exceeds all COVID protocols at every level, including the federal level. And I mentioned federal because in the context that Seaplane is regulated under the Federal Aviation Act, parts 135 and 91, which we exhaustively briefed, so I don't intend to belabor that aspect at this moment. I would like to refer to the excerpt of record beginning at page 56 in the context that we believe that, among other things, those excerpts demonstrate that there are triable issues of material fact outstanding, that we're not allowed to go forward in the trial court because of Judge Alsop's order. At page six, and I will paraphrase somewhat if it please the court. Beginning at line 11, I stated that I'm not suggesting that the same jargon with reference to recreational flying, which is at the heart of this matter, needed to be used, Seaplane's position is that the jargon recreational flying is a construct, it is not defined anywhere in the law, the court responded that, well, we know what it is, sorry, we all know what it is, I've seen the airplane take off, it's a pilot takes up two or three people in the airplane and they fly over the bay and look at all the landmarks and then they come back and land 45 minutes later at the same place they took off from. And again, I'm quoting the trial court, to me, we all know that's what they're talking about and in that airplane flight, it's a close quarter situation where COVID-19 could be spread from one passenger to the next. And then the court goes on to say that the county's view is that people are just doing this for fun. I would like to pause right there and say that there was no evidence before the court from which Judge Alsup could make those suppositions. And I say this with due respect to the trial court, but I have a duty to point out these inconsistencies because it goes right to the heart of priable issues of material fact. What is the inconsistency? I thought you were just arguing that he just had no basis for what he said. I don't see what the inconsistency is. Well, the inconsistency is that the, I'm now referring to ER 562 paragraph two. The county argues that Mr. Jensen, who is the county's employee, the manager of the county's airport, which I will talk about further in a moment, they argue that Mr. Jensen's presence at Noss Field, which is the county's airport, even assuming he observed aircraft taking off and landing does not show that the county knew the purpose of the flights or the intentions of their passengers. And I respectfully submit that nor does the trial court know the purposes of the flight or the intentions of the passengers. While I am referencing that material in the record, the county goes on to argue that they make that argument about what the passengers are doing or thinking or not doing or thinking, but at the same time, they rely upon observations of members of the public seeing flights taking off and landing from the seaplane base, and that is cited as alleged evidence of health order violations. So on the one hand, their manager at their airport observing flights regulated exactly the same way as seaplane, doesn't know what's happening, allegedly doesn't know what's happening, and people on the ground near sea base, seaplanes taking off, and apparently as did Judge Alsup, and that is a basis to regulate. So that's the inconsistency. Well, do you dispute that they were engaging in recreational, in providing recreational flights? I dispute that they were exclusively engaged in providing recreational flights. And if I could interject a question on that, if they're not, if people aren't taking those flights for recreation, what else are they taking them for? Raining, and in some instances, flights to, I'm thinking of one instance, and I probably can't find it in the record quickly, but flights to Lake Tahoe, there are doctors who fly on seaplane to get to patients in various other areas. Judge Corman's question, can you hear me? Yes. To follow up with Judge Corman's question, is it your position that seaplane was not engaging in recreational flights? No, that is not our position. Okay. I thought you were comparing, you were saying that it was an equal protection claim where you said that seaplane was treated different, and that it was different than, I think, Scanlon Aviation, which was also flying recreational flights, and that the county knew of this. Isn't that, that was what I understood from your brief. Is that still your position? It is, Your Honor. What I want to say is there's, there is no, they're not exclusively recreational flights, and I don't believe that Scanlon, had he been allowed to testify at trial, would have testified that his flights were exclusively recreational either, my point is that Scanlon and seaplane do the same thing, and while I'm, and Scanlon lies under the nose of the manager of the airport at Noss Field. We did not get to put Mr. Scanlon on, and we did not get to put Mr. Jensen on, who's the Noss Field manager. And I can address that further. So the missing element for me was the absence of evidence in the record that Scanlon, that the county knew that Scanlon Aviation was flying recreational flights, the brief that you provided pointed to a negative. He didn't say he wasn't flying recreational flights, but I didn't see how that showed the county knew that he was. Do you want to address that? I do, Your Honor. Mr. Scanlon, I should say the county filed a declaration of, I meant to say Mr. Jensen, Mr. Jensen is the airport manager, or at least at this, at the time these events occurred, was the airport manager. Mr. Scanlon's office is immediately adjacent to Mr. Jensen's office on the runway at Noss Field. Had he been allowed to testify at trial, Mr. Scanlon would have testified as to what his interaction with Mr. Jensen was, what the orientation of Mr. Jensen's office toward the airport or the, or the runway toward the airplanes that are identical to Seaplane's airplanes, with the exception of Seaplane's airplanes float and Scanlon Aviation's airplanes do not float. And those may seem like minor facts, but we assert that those are material because it defies credibility to think that Jensen in his capacity as airport manager doesn't see what's happening in front of him out his glass wall facing the runway. I have a question for you also, if I could interject it, if, if the flights are primarily recreational, but not exclusively. If I understood your question. If the, if the Seaplane flights are mostly for recreation. Of the passengers, but it's not exclusive because there might be, for example, a doctor was going to get off and see a patient. What's the result in terms of the, I don't, I'm sorry. I didn't mean to speak over you, your honor. I was just trying to say if it's primary recreation use. But also some occasional, not recreation. What's the result under the zoning in terms of your contention? I, first of all, I can't, I would, if I could, but I can't give you percentages of what is recreational or flying medical professional professionals or providing training. I know there is some of all of that. I think it's a fair assumption that there is a substantial recreational component and my response is that it doesn't matter because there is no definition of recreational flying under the federal aviation citations that we provided that I mentioned earlier in there, in our briefs. Thank you. Well, are you saying that if Mr. Jensen looked out the window, he would be able to tell that Scanlon aviation flights were recreational by visual observation? That's your honor. Honestly, that is my surmise, but had we been able to put Mr. Jensen in the stand and ask him that, we would know that he testified in effect. It was in his declaration that his duties are to manage the airport on a day-to-day basis. I'm paraphrasing there. It's in his declaration, which appears at page 562 of the excerpt. I've been employed as the airport manager continuously since 2011. As the airport manager, I manage, coordinate, and oversee daily operations at the airport. There will be more in the public record, which we rely on. Judge also had a question about why didn't we help him out by bringing him deposition testimony. I submit that that's not required. And there are tactical reasons that we didn't do that, but the public record describes what Mr. Scanlon's job is. And I don't think it's a leap to assume that management, coordination, and oversight of daily operations at the airport involves observation of what the airport means. But counsel, can you raise a genuine issue of material fact by making an assumption that may or may not be reasonable? Yes, your honor. Scanlon says he is regulated by this management at the airport. That's a material fact because Scanlon is licensed exactly as Seaplane is licensed and does exactly what Seaplane does. I don't mean day in and day out every flight. I understand that, but still you have no evidence that was produced by a deposition or an interrogatory or any discovery device that would show that what the flights are that are observed by Scanlon and surely you could have done discovery in the case, right? We did do discovery. We could have done that discovery, but again, there are reasons for that. And I submit, your honor, that we have a right to present evidence at trial, including cross-examination of county witnesses. Well, is that true in every case where the court grants a summary judgment? Do those parties in those other cases where the ninth circuit has affirmed summary judgments, were the parties there entitled to submit evidence that wasn't in the record? I couldn't speculate on every one of those cases, your honor. I can say that in this case, the declaration of Scanlon is comprehensive and the declaration of Jensen alone raises a triable issue of material fact. What is he doing? What did he do with reference to airplanes flying out of that airport during the pandemic? What did he see? I think those are legitimate questions. Okay. Thank you, counsel. Thank you, your honor. I assume the court would like me to address the cross appeal or is that for later? I think you've used up your time, but I think I would address the cross appeal later. Should I do that on rebuttal or would you like me to do that? Why don't we do this? Why don't you stop now? You don't have any reserve time for rebuttal on your basic argument, but you can subsequently, I'll give you two minutes for rebuttal and at that time, you can address your answer to the cross appeal. Very well, your honor. Thank you. Thank you. Okay. Next, we hear from Mr. Is it Dardine or Dardine? Dardine, your honor. Thank you. Mr. Dardine, please proceed. Thank you, your honor. Good morning. May it please the court. My name is JC Dardine and I represent the County of Marin in the case. I think that the court just sort of hit the nail on the head on what the primary issue in this case, and the reason that the district court correctly dismissed seaplanes equal protection claim in that there wasn't any evidence that seaplane was treated any differently than any of the other air carriers or really any other business in Marin County with respect to the health order. The argument that seaplane made in its brief and the same argument that it made here today is really primarily based on that declaration from Patrick Scanlon, who runs the air charter business out of NOS field and seaplanes argument that that declaration shows that the County didn't enforce its recreational. Uh, it's ban on recreational flights for the air carriers operating out of NOS field. It's just simply not correct. The most generous interpretation of what Mr. Scanlon's declaration said was that his business was conducting recreational flights, but even that's a real threat based on the language in the declaration. When you look at the declaration, what Mr. Scanlon actually said is that he didn't distinguish between recreational and non-recreational flights when he was conducting his business, but he didn't explicitly say that he was conducting recreational flights. I think as, as one of you pointed out, it was sort of the lack of a, uh, it was an And that's really an important distinction. And it's something that the district court noted when it ruled in the County's favor in this case. So it wasn't that the district court weighed the evidence or that it ignored the Scanlon declaration as seaplane argues. It's that a reasonable interpretation of that declaration. It doesn't support seaplanes argument. The seaplane, uh, you know, you heard seaplane tried to defend that declaration by somehow trying to put the blame on the County for not deposing Mr. Scanlon or saying that he didn't have an opportunity to testify at trial. But this argument, I think really sidesteps the fact that it's not the County's responsibility to disprove or try to clarify the evidence that seaplane presents in opposition to a motion for summary judgment, if the declaration said what it said, and it's not our responsibility to try and prove seaplane's case for it. If you need it, excuse me. I thought Mr. Sharp was saying that, uh, Mr. Jensen could observe what was happening at the airport and would have, uh, been able to discern that, uh, Scanlon aviation was, um, flying recreational flights. I think if I understand seaplane's argument, that's the second part of what they're, what they're claiming. The first is that Mr. Scanlon's declaration affirmatively shows that other air carriers were doing recreational flights. And the second part is that the County should have known based on the declaration or based on, uh, you know, Mr. Jensen's observations that they were conducting recreational flights. But as the court has pointed out, the fact that somebody was operating flights out of Noss field does not necessarily mean that they were recreational flights and it's only the recreational flights that would have potentially been in violation of the health order in this case. So that's the fact that, you know, somebody was doing flights. That doesn't mean that they violated the health order. In fact, the, the two examples that Mr. Sharp just gave of the types of flights that seaplane was operating. He said one that they, they, um, were doing training flights or that they may have been transporting people to Lake Tahoe for, you know, doctors for medical What's interesting about both of those example is neither one of those would have been prohibited under the health order, they were both allowed. So it's sort of irrelevant that those are the types of flights that they were operating. The issue in this case is really, uh, was seaplane being prohibited from conducting recreational flights where other air carriers were not being prohibited from doing that. And there's just no evidence to support that. Um, it is true that Mr. Jensen was at the airport, but his declaration very clearly says that he had no knowledge of anybody conducting recreational flights out of that airfield. And there's no evidence to contradict that. What the evidence in this case really shows is that the County only received three complaints of air carriers anywhere in Marine County that were operating recreational flights. And they investigated all three of those the same without regards to whether they were operating from Nossfield or they were operating from Richardson Bay or any other location. And those three airlines were, um, Skydive Golden Gate, which operates out of Nossfield. There was SF helicopters, which operates out of the same location at seaplane, and then there was seaplane. And in all three of those instances, they were treated exactly the same as all the other, um, they were treated exactly the same in that they were not allowed to short time when recreational flights were not allowed, as soon as recreational flights were allowed, um, seaplane was able to continue its operations. And in fact, uh, seaplane was allowed to, uh, continue its recreational flights. Even before it filed this lawsuit. So, um, the, not only does the Scanlon declaration really not support seaplanes argument, but the declaration from Dan Jensen, the airport manager also goes that the County didn't have any knowledge and that's really the crux of this issue because seaplane has to go that the County intentionally treated it differently than all other carriers. And it can't show that because there's no evidence to support that. And that's the reason that the district court granted the summary judgment in favor of the County. There's been sort of a repeated assertion. I think there was a bit of an insinuation that was made about this today. Um, that, you know, the, the district court had excluded the Nossfield air carriers from its definition of who was similarly situated and who was a comparator to seaplane. But as I just mentioned, that's clearly not the case because one of the other air carriers that the County received complaints about, and that it actually. Actively enforced was a carrier that was operating at a Nossfield. So when the County did receive a report that somebody at Nossfield was doing recreational flights, they did put a stop to that just the same way that they did for seaplane. So it didn't matter whether or not it was, you know, uh, at a Nossfield or out of a different location. There was also, um, some briefings, some mentioned in the brief that seaplane, uh, filed that suggesting that, you know, um, it was somehow improper for, for the County to rely on the voluntary compliance from members of the community or that it relied on complaints from the community as a guide to, uh, to enforcement that that was somehow improper. I mean, this is a little bit like suggesting that, you know, the police violate equal protection when they respond to a nine one one call, but just simply not how the police operate in large part, because they can't be everywhere all at once. Here, the County had to rely on community cooperation and reports of violations because we simply didn't have the resources to do, you know, door-to-door inspections to make sure that everybody was complying with the order and the record is very clear. Like I said, that when the County received a complaint, it investigated them just the same. There's no evidence that seaplane was singled out for disparate treatment. Really, you know, when it comes right down to it, I think that the issue in this lawsuit is, is not really about seaplane being treated differently. It's actually that, you know, seaplane was being treated the same as all other businesses when it thought it should have been treated differently in that it should have been allowed to continue its sightseeing business, not withstanding the health orders. This is very clear from the early correspondence that's in the record. The seaplane had with the County when it essentially argued that the County didn't have jurisdiction over it. And that was sort of the insinuation that Mr. Sharp was making here again today, where the suggestion that, you know, the FAA regulations as far as certification dictate whether or not the County health order applies to it. And that's just simply not the case. The district court correctly ruled that the FAA certification was irrelevant and seaplane didn't issue or didn't challenge this ruling in its appeal. What it is arguing is that seaplane was the enforcement against seaplane was different than the enforcement against the other air carriers. That's a different argument. I do want to just briefly touch on the issues that were raised in our appeal regarding the preemption. And, you know, the first thing I want to mention that I do think that the court made a mistake on is that is that preemption cause of action and that the district court really didn't have ruled on that issue since the provision of the health order that seaplane is complaining about, like I mentioned, had already been repealed or had already been dropped before seaplane even filed its lawsuit. The guy asked about that. I understood that the order was not actually repealed, but that it remains in place, but they just, the County just withdrew the recreational flights prohibition. That's what opposing counsel says. Is that correct? Well, it's partially correct in that what the, what the County did as it was a program where it allowed more and more business operations to operate. So the section that prevented recreational flights, maybe repealed isn't the best word, but it was no longer effective against seaplane as of I think it was August of 2020 when that when recreational activities, including recreational airline flights was added to the list of businesses that could operate. So I did see something, I think it was in the reply that seaplane had filed saying that the health order is still in effect. That's just, that's not the case. The health order was repealed ultimately, and it's no longer in effect. And it's just the same as the state has since issued a proclamation repealing its emergency order. The County has since issued a proclamation repealing its emergency order. So none of these orders are really in effect anymore. And, you know, so for that reason, I think that the district court really probably shouldn't have gone down this road to begin with about ruling on the preemption issue, because it was really no longer valid at the time. It wasn't an issue that was a live controversy. And, you know, I know that the court's obviously very familiar with the recent precedents in the ninth circuit where there have been pretty consistent rulings. I think on these COVID regulations that once they're repealed, unless they're generally no longer something that should be ruled on by the court. And in this case, you know, the district court didn't do that. It did make a ruling on the issue. In fact, it did that sui sponte, which was a little bit odd. But in so doing when the court did that, it really, it really didn't give itself an opportunity to hear from, for instance, the FAA when the FAA, I'm sorry, the thought that the federal law at issue preempted the state's health order. And the FAA said, sorry, we don't want to issue an opinion about that because the issue has moved. So that just lends further credence to the notion that the court really shouldn't have gone down that road to begin with. But even if the even if the FAA did issue an opinion, I think it's pretty clear that the opinion from the FAA is that the, the federal, the federal law does not preempt the state law, particularly because this is an issue of the state's police powers and a public health emergency. And that's not an area that is typically regulated by the federal government. That's something that's typically left due to states and the local governments to figure out. So, you know, my time's almost up. I want to leave any time to answer any questions, but, you know, in essence, the FAA, I'm sorry, the district court really could not have gone down that road because the issue was moot. And also because the preemption just doesn't apply in this case. Council, I have a couple of questions for you. One is the health ordinance was passed after there was a state order. The county ordinance was passed after there was a state order declaring an emergency, as I understand it. And I further understand that that emergency order has since lapsed or been withdrawn. Is that right? That's correct. I believe that if there's no emergency order, extent right now, does that mean that the county could not re-institute its ordinance without such a state order? The county could implement its own declaration, declaring a state of emergency, but that would have to be done by the board of supervisors. It couldn't be done by the health officer, which is what happened before. So it doesn't necessarily require the state order. The county could implement its own order. Okay. Thank you. Just to confirm, any order imposing COVID restrictions have now been removed or repealed or what's the status? I hesitate to say that any order, because it was done in such an incremental way that there are still some for instance, it's not an order. It's not a mandatory requirement, but masking suggestions, for instance, that is still something that has been instituted by the public health officer, but it's not a mandatory order. So there are no mandatory restrictions at this time on any of the businesses. Okay. Thank you. Thank you. One further question. Under your view of the case on the cross appeal, is it that the answer is that we should, you'd like us to rule that we vacate the order that was made on preemption and remand with instructions to dismiss as moot? That's exactly correct, your honor. And I appreciate the clarification. Okay. Thank you. Mr. Sharp, well, I think Mr. Dardenne, Mr. Sharp, we'll put two minutes on the clock for you. And if you could respond to the cross appeal and make a rebuttal argument on your claim against the county in that time period, it would be useful. Thank you, your honor. Regarding the cross appeal, I am familiar with the citations that Mr. Dardenne just referred to the Brock decision and the glazing union collections case decision. I would say with regard to the board of trustees of the glazing health and welfare case, it is inapposite. That is a collections case. It does not have anything to do with the pandemic. With regard to the Brock decision, which does have to do with the pandemic. I would just offer that COVID is fluid. The county hosts a website currently with recommendations about COVID. There are those recommendations everywhere. We are appearing via Zoom because COVID is fluid. You can't walk into a Marin County courthouse courtroom, except under certain limited circumstances because of COVID and I would ask the court to consider that in light of those facts and facts adduced in the record, Sea Plain does have a reasonable expectation that the county could try to shut it down again with reference to rebuttal of Mr. Dardenne's arguments. It was not Sea Plain that quote unquote blamed anybody for not bringing deposition testimony before the court. That was the judge and the judge said in summary, judge also said it would help if I had that deposition testimony, which I think is a strong indication that there to come to its decision here. Finally, I would just offer at page 468 of the excerpt of records, paragraphs three and four as to what Mr. Scanlon actually testified to in his declaration. It is comprehensive. Thank you. Thank you, Mr. Sharp. And I want to thank again both Mr. Sharp and Mr. Dardenne for their excellent arguments. And last, Judge Corman or Judge, I could have another question. We will now submit this case and the parties will hear from us in due course. Thank you. Thank you.
judges: GOULD, IKUTA, Korman